**ORIGINAL**

# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 10-491V
Filed: July 31, 2015
To be Published

**FILED**
JUL 3 1 2015
U.S. COURT OF
FEDERAL CLAIMS

*************************************
CHANDRA HILAND, Parent of       *
LILLYEN HILAND, Deceased,       *
                                *
            Petitioner,         *   Final attorneys' fees and costs; reasonable
                                *   basis contested; prior interim fees and costs
v.                              *   award; Sudden Infant Death Syndrome
                                *   (SIDS)
SECRETARY OF HEALTH AND         *
HUMAN SERVICES,                 *
                                *
            Respondent.         *
                                *
*************************************

Chandra Hiland, Kalispell, MT, petitioner (pro se).
Justine E. Walters, Washington, DC, for respondent.

**MILLMAN, Special Master**

### FINAL ATTORNEYS' FEES AND COSTS DECISION[1]

I.   **Procedural History**

On July 29, 2010, Chandra Hiland, on behalf of her daughter Lillyen Hiland, the vaccinee, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) ("Vaccine Act" or "Act"). Petitioner alleged that diphtheria-tetanus-acellular-Pertussis ("DTaP"), Inactivated Polio ("IPV"), haemophilus influenzae type b ("Hib"), pneumococcal conjugate ("PCV"), and Rotavirus vaccinations caused Lillyen's death.

Petitioner was represented by Conway, Homer & Chin-Caplan, P.C. The attorney of

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

record was Ronald Homer, although Christina Ciampolillo and other attorneys at the firm also worked on petitioner's case. On May 9, 2011, petitioner's then-counsel indicated that petitioner was searching for alternative counsel to represent her. On July 21, 2011, petitioner filed a motion for interim attorneys' fees and costs. On October 7, 2011, petitioner's counsel filed a motion to withdraw, which the undersigned granted on October 28, 2011.

On January 31, 2012, the undersigned issued a decision awarding $20,116.38 in interim attorneys' fees and costs. Respondent filed a motion for review on March 1, 2012, arguing that the undersigned lacked authority to award interim attorneys' fees and costs and that there was no reasonable basis for petitioner's claim. The appeal was assigned to Judge Lawrence Block. On March 15, 2012, petitioner's former counsel, Ronald Homer, filed a motion for leave to file a response to respondent's motion for review. Respondent filed a response to this motion on April 27, 2012, in which she objected to providing Mr. Homer with a copy of her motion for review and supporting memorandum absent written consent from petitioner.

From January to May 2012, the undersigned held several telephonic status conferences in this matter, during which petitioner said she had contacted several different attorneys to see if they would represent her. After being unable to find another attorney to represent her, during a status conference on May 31, 2012, petitioner requested her case be dismissed because she did not have an expert to support her allegations. On May 31, 2012, the undersigned issued a decision dismissing petitioner's claim. Judgment entered on July 3, 2012.

On March 18, 2015, petitioner's former counsel Mr. Homer filed a second motion for leave to file a response to respondent's motion for review. Respondent filed a response to the motion on April 1, 2015, and Mr. Homer filed a reply on April 13, 2015.

The case was reassigned from Judge Block to Chief Judge Patricia Campbell-Smith on June 10, 2015. On June 11, 2015, Chief Judge Campbell-Smith filed an order remanding the issue back to the special master. Chief Judge Campbell-Smith directed the undersigned to "address whether the intervening dismissal of petitioner's claim affects her determination that petitioner's claim was brought in good faith and had a reasonable basis." Order, June 10, 2015, ECF No. 57.

The undersigned issued an order on June 12, 2015, alerting petitioner to the issue regarding attorneys' fees and costs. This order was mailed to petitioner's two last known addresses. The undersigned stated that she intended to hold a telephonic status conference with petitioner's former counsel, Mr. Homer, and respondent's counsel, Justine Walters, and that petitioner may participate in any further proceedings. Petitioner phoned the undersigned's law clerk on June 18, 2015. She stated she had received the undersigned's order and did not wish to participate in further proceedings regarding attorneys' fees and costs.

A telephonic status conference with Mr. Homer and Ms. Walters was scheduled for June 26, 2015. However, due to Mr. Homer's unavailability on June 26, the conference was held on June 29, 2015. The parties stated that they did not think any further briefing was necessary before the undersigned issues a decision.

## II. Legal Standard for Attorneys' Fees and Costs

Under the Vaccine Act, a special master or a Court of Federal Claims judge may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program Rules. It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011). In determining reasonable basis, the court looks "'not at the likelihood of success [of a claim] but more to the feasibility of the claim.'" Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9. Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis."). Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation. See Austin, 2013 WL 659574, at *8; Hamrick, 2007 WL 4793152.

Additionally, counsel must ensure that a reasonable basis exists throughout the course of litigation. A petition containing only bare allegations of a vaccine injury or death still has a reasonable basis at the time of filing if a petitioner obtains and files supporting medical records or an expert opinion as the case proceeds. Turner, 2007 WL 4410030, at *6. Conversely, a petition with a reasonable basis at the beginning of litigation may no longer be supported by a reasonable basis at a later phase, for example, if an expert report has not been filed for a prolonged time or an expert report is unsupported and deficient. Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 31–34 (Fed. Cl. 1992) (affirming a special master's denial of fees after the submission of an unsupported expert opinion based on the finding there was no reasonable basis to continue the case).

## III. Reasonable Basis Analysis

Good faith and reasonable basis are necessary findings when awarding fees in any case where a petitioner has not yet prevailed on entitlement, whether the petitioner seeks final

attorneys' fees and costs or interim attorneys' fees and costs.[2] It logically follows that when a petitioner requests interim attorneys' fees and costs, the special master must analyze the reasonableness of the case at the time of the fee request, although occasionally, special masters have deferred ruling on interim fee requests when they feel the record is not complete enough to establish a reasonable basis. See Morris v. Sec'y of HHS, No. 12-415V, 2014 WL 8661863, at *6 (Fed. Cl. Spec. Mstr. June 4, 2014) (Special Master Corcoran deferred ruling on petitioner's interim fee application because he found the petitioner had not established reasonable basis at that time and the "existing record suggests proving causation in this case may be very difficult."); Austin, 2012 WL 592891 (order deferring a decision on interim fees and costs application and expressing concern about whether the case had a reasonable basis).

In the instant case, petitioner filed her petition on July 29, 2010, alleging that the vaccinations Lillyen received on July 30, 2008 caused her death on August 5, 2008. The petition was timely filed—but only by a week's time. See 42 U.S.C. § 300aa-16(a)(3) (petition must be filed before the expiration of 24 months from the date of death). If petitioner had not filed her petition by August 5, 2010, it would have been time-barred, adding further impetus to filing the petition when she did. Petitioner filed medical records on compact disc on August 23, 2010, and then filed her affidavit, an amended petition, and medical literature on September 3, 2010. The postmortem examination report stated that Lillyen died of sudden infant death syndrome ("SIDS").[3] Ex. 17, at 1, 4.

---

[2] The Federal Circuit ruled that interim fee awards are permissible under the Vaccine Act in Avera v. Secretary of Health and Human Services, 515 F.3d 1343, 1352 (Fed. Cir. 2008)). The Court stated, "A special master can often determine at an early stage of the proceedings whether a claim was brought in good faith and with a reasonable basis." Id. The Federal Circuit again found interim fee awards appropriate under the Vaccine Act and ruled that interim fee decisions are appealable in Shaw v. Secretary of Health and Human Services, 609 F.3d 1372, 1376 (Fed. Cir. 2010). Post-Avera, a number of judges and many special masters have found interim fee awards permissible under various circumstances, including when petitioner's counsel withdraws from the case. See, e.g., Woods v. Sec'y of HHS, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012) (Judge Williams affirmed the special master's award of interim fees and suggested that when counsel withdraws, and it is unknowable how long case resolution might take, an interim award may be appropriate); Bear v. Sec'y of HHS, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (Special Master Hastings awarded interim fees over respondent's objection in a case where petitioner's counsel was going to withdraw, and the petition had been pending for more than 19 months); Lumsden v. Sec'y of HHS, No. 97-588V, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012) (Special Master Vowell awarded interim fees in an autism case over respondent's objection when petitioner's attorney was withdrawing from the case); Edmonds v. Sec'y of HHS, No. 04-87V, 2012 WL 1229149, at *13 (Fed. Cl. Spec. Mstr. Mar. 22, 2012) (Then-Chief Special Master Campbell-Smith awarded interim fees over respondent's objection in an autism case in which petitioner's counsel was preparing to withdraw). Thus, the special master's authority to award interim attorneys' fees and costs has been repeatedly affirmed, both prior and subsequent to the undersigned's interim award decision in this case. However, whether or not interim fees are awardable is no longer an issue since the undersigned dismissed this case on May 31, 2012. This decision therefore addresses final fees.

[3] SIDS is defined as "the sudden and unexpected death of an apparently healthy infant, typically occurring between the ages of three weeks and five months, and not explained by careful postmortem studies." Dorland's Illustrated Medical Dictionary 1850 (32d ed. 2012).

4

The billing records reveal that petitioner's former counsel obtained a report from Dr. Gill and reviewed it on January 14, 2011. Fee App. at 14. Presumably, since petitioner did not file the report before withdrawing from the case, Dr. Gill's opinion was not favorable to petitioner. After reviewing this report, petitioner's former counsel expended hours conferring with the client, searching for alternative counsel, communicating counsel's efforts to the court and respondent's counsel, and preparing a fee application. See Fee App. at 14–17. Petitioner's counsel filed a motion to withdraw as counsel on October 7, 2011, and the motion was granted on October 28, 2011.

The undersigned previously determined that there was a reasonable basis for petitioner to proceed up until petitioner's former counsel withdrew as counsel from the case in 2011. The basis for this conclusion included the fact that Lillyen's organs at the time of her death were larger than the average weights for a five-month-old child's organs,[4] which could conceivably indicate some kind of inflammatory process. The undersigned also noted that Lillyen had been "fussy" and had a rash prior to her sudden death, which might have indicated a vaccine reaction or an infectious process made worse by the vaccines.[5] Respondent contends that these conclusions were arbitrary and capricious because no medical doctor had opined that Lillyen's organs were abnormally large, and the medical records did not mention any infections or inflammatory process prior to Lillyen's vaccination. Mot. for Review at 17–20. However, the undersigned was not ruling that larger-than-average organs, a rash, and fussiness were appropriate symptoms to indicate causation—only that these appeared to be abnormalities which an expert could possibly find support a finding of a vaccine reaction. See e.g., Bigbee v. Sec'y of HHS, 06-663V, 2012 WL 1237759 (Fed. Cl. Spec. Mstr. 2012) (a case of SIDS after vaccination in which petitioners' expert opined that the infant's enlarged organs were evidence of an inflammatory process; the special master ultimately found respondent's expert more persuasive). Moreover, the timing of Lillyen's death, six days after vaccination, also helps to establish reasonable basis.

Respondent also contends that petitioner's counsel failed to adequately investigate the case by waiting until after filing the petition to engage a medical consultant, even though counsel represented petitioner for almost two years before filing the petition. Mot. for Review at 17. Respondent contends that consulting a medical expert falls under the basic inquiries required prior to filing a petition. Id. It is true that an attorney's pre-filing investigation into the feasibility of the claim is a relevant factor in analyzing whether a petition had a reasonable basis. Cortez v. Sec'y of HHS, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). However, while consulting with an expert prior to filing may be appropriate in some vaccine cases, to require all petitioners to present medical expert support at the time of filing the petition would be wasteful and contrary to Congress' intent. There are numerous cases (for example, cases of Guillain-Barré Syndrome after flu vaccination, or shoulder injuries after any

---

[4] Compare Ex. 6, at 2 (Lillyen's autopsy) with Ex. 16, at 5 ("Organ Weights in Children," in Jurgen Ludwig, Handbook of Autopsy Practice 561 (3d ed. 2002)).

[5] Petitioner's affidavit describes Lillyen as becoming more irritable and sleeping and crying more in the days following her four-month vaccinations. Ex. 10 at ¶ 3–4. Petitioner also states in her affidavit that Lillyen had watery, puffy eyes and a rash on her face. Id. Petitioner told Dr. Sorenson on July 30, 2008, when Lillyen received the vaccinations at issue, that Lillyen had been "fussy lately." Ex. 7, at 9.

vaccination) in which counsel need not consult a medical expert because such cases generally settle. Requiring an expert report for every petition would cause needless expense in many cases and could dissuade attorneys from taking vaccine claims. As the Federal Circuit stated in Avera, "[O]ne of the underlying purposes of the Vaccine Act was to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." 515 F.3d at 1352. To make a blanket requirement that all cases require expert opinion support at the filing of the petition seems contrary to the liberal underpinning of the Vaccine Act.

In this case, petitioner's counsel's first billing record was in October 2008, and counsel worked consistently until the filing of the petition in July 2010 to obtain additional missing medical records. Fee App. at 4–6. Counsel had to file by August 2010 in order to prevent the claim from being time-barred. Counsel did not unreasonably delay their review of the case and made appropriate efforts to "wind up" the case after determining they would withdraw as counsel.

The undersigned based her May 31, 2012 dismissal decision on the lack of medical expert opinion or other evidence substantiating petitioner's allegations. However, the dismissal decision does not negate the undersigned's previous determination that the petition had a reasonable basis at the time she awarded interim fees and costs. No additional evidence was presented to weaken the claim; rather, petitioner failed to present the additional evidence that would be needed to prevail on her claim. Even though this is now a final attorneys' fees decision instead of an interim fees decision, the analysis of reasonable basis remains the same. No additional evidence has been presented to disturb the undersigned's previous finding. Therefore, the undersigned concludes that there was a reasonable basis for the petition up to the point that petitioner's former counsel withdrew as counsel.

## IV. Conclusion

Accordingly, the undersigned awards the amounts previously determined in her then-interim attorneys' fees and costs decision:

a. **$18,113.34,** representing reimbursement for attorneys' fees and costs. The award shall be in the form of one check made jointly payable to petitioner and Conway, Homer & Chin-Caplan, PC;

b. **$1,638.00,** representing reimbursement for attorneys' fees and costs. The award shall be in the form of one check made jointly payable to petitioner and Buxbaum, Daue & Fitzpatrick, PLLC; and

c. **$365.04,** representing reimbursement for petitioner's costs. The award shall be in the form of a check made payable to petitioner.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[6]

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party's filing a notice renouncing the right to seek review.

6

**IT IS SO ORDERED.**

Dated: July 31, 2015

                                                                                             Laura D. Millman
                                                                                             Special Master